IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JUAN A. THOMAS, Individually and On Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., D/B/A WELLS FARGO DEALER SERVICES, NATIONAL GENERAL HOLDINGS CORP. and NATIONAL GENERAL INSURANCE COMPANY | ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Juan A. Thomas, individually, and on behalf of all other members of the public similarly situated, for his Complaint against Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., doing business as Wells Fargo Dealer Services (collectively, "Wells Fargo"), National General Holdings Corp. and National General Insurance Company (collectively, "National General"), based on information and belief, alleges as follows:

## NATURE OF THE ACTION

1.      Since at least 2012, Wells Fargo, together with auto insurance giant National General, engaged in a scheme to bilk millions of dollars from unsuspecting customers who were forced to pay for auto insurance they did not need or want.  Defendants recently revealed that more than 800,000 auto loan customers paid for unnecessary auto insurance policies, pushing nearly 250,000 of them into delinquency and resulting in nearly 25,000 unlawful vehicle repossessions.

2.      The auto insurance policies at issue in this case are commonly referred to as Collateral Protection Insurance ("CPI") which are similar to auto insurance policies commonly taken out by vehicle owners to cover the cost of damage to the vehicle. Ordinarily, if proof of

auto insurance was not received by Defendants' CPI provider, in this case National General, notices were required to be sent to borrowers in order to prompt them to obtain the required coverage. However, neither Defendants nor National General, which underwrote the CPI policies, checked their internal database to determine whether their customers had insurance coverage or, if they did, they simply ignored that information. Instead, Defendants imposed on customers redundant auto insurance coverage and then frequently without any notice, automatically deducted the cost of the CPI insurance from the customers' bank account along with the regularly scheduled principal and interest payment for the auto loan.

3.      Not only were the CPI policies unnecessary, they were more expensive than the coverage borrowers obtained on their own. Additionally, Defendants received a kickback from National General in the form of shared commissions on each CPI policy, which provided the financial incentive to both Defendants and National General to unlawfully churn these unneeded and unwanted policies.

4.      Compounding the shocking nature of the misconduct, Defendants' failure to properly disclose to their customers the unlawful CPI policies and/or the resulting automatic deductions from customers' bank accounts often put customers in a financial tailspin.

5.      These unlawful deductions resulted in inflated premiums, account delinquencies and related charges, overdrawn payment accounts, late fees, increased interest rates, repossessed vehicles and related costs and damage to borrowers' credit.

6.      When borrowers, including Plaintiff, protested and informed Defendants that they did, in fact, maintain the required insurance and that the CPI was unnecessary, Defendants refused to remove the unlawful charges. Borrowers were forced to pay the charges in order to maintain their accounts in good standing, avoid further late fees and interest charges, and avoid repossession of their vehicles.

7.      Wells Fargo formed an unlawful enterprise with National General. When customers financed cars with Wells Fargo, the buyers' information was automatically sent by

2

Wells Fargo to National General, which was supposed to check a database shared between Wells Fargo and National General, to determine whether the borrower had insurance coverage. If not, the insurer was required to send out notice to the borrower in order to prompt them to obtain the required coverage. Despite these procedures, Defendants developed a uniform practice of automatically obtaining unnecessary and unlawful CPI policies and deducted the cost of the CPI policies (policy premiums and interest) automatically from their borrower' bank account.

8.      Defendants failed to properly disclose or provide any notice of the deductions for the CPI insurance policies resulting in borrowers' missed payments, late fees, account overdraft fees, higher interest rates, repossessed vehicles and damaged credit.

9.      This is a proposed class action brought by Plaintiff on behalf of all persons who obtained an auto loan from Defendants and who were required to pay for an unnecessary CPI policy. Plaintiff challenges, as further described herein, Defendants' practice of secretly imposing such CPI on their customers and automatically deducting the cost of such insurance from their bank accounts.

**JURISDICTION AND VENUE**

10.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.

11.      This Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1961, 1962 and 1964. This Court has personal jurisdiction over Defendants under 18 U.S.C. § 1965. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

12.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because the acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District.

## PARTIES

13.     Plaintiff Juan A. Thomas is an individual and a citizen of Brooklyn, New York.

14.     Defendant Wells Fargo & Company is a corporation organized and existing under the laws of Delaware and headquartered in San Francisco, California.  Therefore, Defendant Wells Fargo & Company is a citizen of the States of Delaware and California.

15.     Defendant Wells Fargo Bank, N.A., doing business as Wells Fargo Dealer Services, is a subsidiary of Wells Fargo & Company, and is a national bank organized and existing as a national association under the National Bank Act, 12 U.S.C. §§ 21 *et seq.*, with its principal place of business in Sioux Falls, South Dakota.  Defendant Wells Fargo Bank, N.A. is a citizen of the State of South Dakota.

16.     Defendant National General Holdings Corp. is an insurance holding company that is headquartered in New York, New York.  National General Holdings Corp. is a citizen of the State of New York.

17.     Defendant National General Insurance Company is a subsidiary of National General Holdings Corp. and is an insurance company with its principal place of business in Winston-Salem, North Carolina.  National General Insurance Company is a citizen of the State of North Carolina.

18.    Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendants committed in connection with the enterprise, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives, each of whom was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendants and the enterprise.

19.    Plaintiff is informed and believes, and based thereon, alleges that, at all material times herein, each Wells Fargo defendant, Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), was the agent, servant, or employee of, and acted within the purpose, scope, and course of said agency, service, or employment, and with the express or implied knowledge, permission, and consent of the other Wells Fargo defendant, and ratified and approved the acts of the other Wells Fargo defendant.

20.    Wells Fargo & Company exercises specific and financial control over the operations of Wells Fargo Bank, N.A., and it dictates the policies and practices of Wells Fargo Bank, N.A. Wells Fargo & Company also exercises power and control over the specific activities at issue in this lawsuit, and it is the ultimate recipient of the ill-gotten gains described herein.

21.    Plaintiff is informed and believes, and based thereon, alleges that, at all material times herein, each National General defendant, National General Holdings Corp. and National General Insurance Company, was the agent, servant, or employee of, and acted within the purpose, scope, and course of said agency, service, or employment, and with the express or implied knowledge, permission, and consent of the other National General defendant, and ratified and approved the acts of the other Wells Fargo defendant.

22.    National General Holdings Corp. exercises specific and financial control over the operations of National General Insurance Company, and it dictates the policies and practices of

5

National General Insurance Company. National General Holdings Corp. also exercises power and control over the specific activities at issue in this lawsuit, and it is the ultimate recipient of the ill-gotten gains described herein.

## FACTUAL BACKGROUND

23.     Since at least 2012, Defendants charged more than 800,000 of their borrowers for CPI auto insurance that they did not need or want, which Defendants failed to properly disclose. As a result, borrowers were unlawfully charged inflated CPI policy premiums and interest, late fees, and, in some cases, had their vehicles repossessed. Because of Defendants' unlawful acts, borrowers saw their bank accounts overdrawn, with unlawful fees assessed, and their credit scores damaged.

24.     This unlawful scheme was exposed by a report in the *The New York Times* on July 27, 2017 online and in print on July 28, 2017, based on a 60-page internal report prepared for the bank's executives.  The *Times* reported that the "expense of unneeded insurance, which covered collision damage, pushed roughly 274,000 Wells Fargo customers into delinquency and resulte in almost 25,000 wrongful vehicle repossessions."  "Among the Wells Fargo customers hurt by the practice were military service members on active duty.

25.     Franklin R. Codel, the head of consumer lending at Wells Fargo, essentially conceded rampant misconduct at the bank's senior levels, stating, "We have a huge responsibility and fell short of our ideals for managing and providing oversight of the third-party vendor and our own operations."

26.     In a public statement, Wells Fargo's spokesperson Jennifer A. Temple said, "We take full responsibility for these errors and are deeply sorry for any harm we caused customers." In spite of Wells Fargo's public statements that it would take "full responsibility", media reports

as recent as August 18, 2017 indicate that Wells Fargo has refused to provide compensation to consumers who fell victim to Wells Fargo's deceptive forced insurance program.  Moreover, Wells Fargo has failed to institute a comprehensive effort to notify credit bureaus that the deceptive insurance charges it extracted from consumers, which were then falsely labelled as "late payments" marring the consumers' credit history, should be stricken from the impacted consumer's credit report.

27.    Borrowers financed their vehicles through Wells Fargo. Wells Fargo provided the borrower's information to National General who was to then verify if the borrower had insurance coverage on the vehicle.

28.    If the borrower failed to provide proof of insurance, Wells Fargo was required to send the borrower a request that he or she provide proof of insurance. However, Wells Fargo and National General engaged in a practice of secretly and automatically imposing these CPI policies on borrowers who, in many instances, already had auto insurance. Thus, borrowers were paying premiums and interest on redundant CPI policies they did not need or request.

29.    Defendants failed to properly disclose both the CPI policies and their resulting charges to borrowers.  Neither Mr. Thomas, nor similarly situated members of the class, ever assented to the formation of a contract or otherwise agreed to enter into the deceptive CPI policies or to be charged for such policies.

30.    Because the CPI insurance charges were not properly disclosed and unknown to borrowers, they often resulted in delinquencies in those cases where the borrower had insufficient funds to cover the cost of the CPI policy. In turn, Defendants assessed late fees to borrowers' bank accounts and charges for insufficient funds. These actions by Defendants not

surprisingly resulted in damage to borrowers' credit reports as Defendants reported these delinquencies to credit reporting agencies.

31.    The CPI insurance policies coupled with Defendants' internal rules about the order in which payments are applied to a customer's account further exacerbated the problem. When Defendants receive a payment on an auto loan account, they applied it in the following order: interest on the auto loan, interest on the CPI insurance, principal on the auto loan, and then premium on the CPI policy.

32.    This order of payments resulted in both an increased amount of overall interest paid by borrowers and frequently overdrawn bank accounts and auto loan delinquencies.

33.    The extra, unexpected, and undisclosed additional expense pushed approximately 274,000 of Defendants' auto loan customers into delinquency resulting in almost 25,000 wrongly repossessed vehicles.

34.    Not only were the CPI insurance policies unnecessary, they were more expensive than the auto insurance policies customers had already obtained on their own.

35.    Unbeknownst to borrowers, Wells Fargo obtained the policies through National General, who received a commission on the policies "sold" to borrowers, and Defendants even shared in the commissions with National General, further boosting their profits.

**PLAINTIFF'S ALLEGATIONS**

36.    Plaintiff Juan A. Thomas purchased a vehicle from Acura of Denville in Denville, New Jersey in December 2012.

37.    At the time of purchase, Plaintiff was a resident of Brooklyn, New York.

38.    Plaintiff financed the purchase of his vehicle with a loan from Wells Fargo, with a disclosed monthly payment of $413.48, to begin in February 2013.

39.     Within about a week after the purchase of the vehicle, Wells Fargo contacted Plaintiff and informed him that he was required by Wells Fargo to take additional insurance on his vehicle on account of his loan.  Plaintiff contested this and replied that he already had adequate insurance through State Farm.

40.     Shortly after the purchase of the vehicle, Wells Fargo Wells Fargo placed a CPI policy on Plaintiff's auto loan account and charged him an amount over and above his scheduled monthly payment of $413.48.

41.     Over the next several weeks and months, Plaintiff repeatedly told Wells Fargo representatives, including the Office of the President of Wells Fargo, that he already had adequate auto insurance and sent proof of his insurance to Wells Fargo's representatives multiple times.

42.     Plaintiff's payments to Wells Fargo on the vehicle loan and additional insurance at issue occurred over the ensuing months and years while he was a resident of Brooklyn, New York.  Plaintiff is still paying loan payments.

43.     Believing that Wells Fargo was unreasonably demanding additional auto insurance, Plaintiff refused to pay the amount required for the additional insurance. Thus, he continued to pay $413.48 for a period of time.  In the meantime, Wells Fargo increased the amount of the monthly payment from $413.48 to about $600 and later to about $1,000.  The additional charges Plaintiff was required to incur necessarily caused his 48-month loan to increase in term by a matter of years, costing Plaintiff unnecessary and significant additional money.

44.    Despite receiving the above information repeatedly from Plaintiff, Wells Fargo did not credit Plaintiff's account for the unlawful charges or otherwise refund the amounts charged that it had collected.  Indeed, Defendants continued to charge Plaintiff for the CPI policy.

45.    In addition, as a result of the increased CPI charges on his auto loan account, Plaintiff was charged a late fee immediately after the CPI policy was in place.

### STATUTE OF LIMITATIONS

46.    Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiff and members of the Class, as defined below, were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the true nature of the Defendants' force-placed insurance scheme.

47.    Defendants are under a continuous duty to disclose to Plaintiff and members of the classes the true character, quality, and nature of the charges they assess on borrowers' accounts. Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of their assessment of the CPI auto insurance premiums against borrowers' accounts. Plaintiff and members of the Class reasonably relied upon Defendants' knowing, affirmative, and active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation as a defense in this action.

48.    The causes of action alleged herein did or will only accrue upon discovery of the true nature of the charges assessed against borrowers' accounts, as a result of Defendants' fraudulent concealment of material facts. Plaintiff and members of the Class did not discover,

and could not have discovered, through the exercise of reasonable diligence, the true nature of the unlawful fees assessed against their accounts.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff bring this action, on behalf of themselves and all others similarly situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

50.     The classes Plaintiff seek to represent are defined as follows:

**Nationwide Class**
All residents of the United States of America who obtained an auto loan through Defendants or their subsidiaries or divisions, and who were assessed charges for CPI auto insurance.

**New York State Class**
All residents of the State of New York who obtained an auto loan through Defendants or their subsidiaries or divisions, and who were assessed charges for CPI auto insurance.

51.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

52.     Plaintiff reserves the right to establish sub-classes as appropriate.

53.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof. As used herein, the term "Class Members" shall mean and refer to the members of the Class.

54.     Community of Interest: There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

55.     Numerosity: While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the

11

Class is ascertainable based upon the records maintained by Defendants. At this time, Plaintiff is informed and believes that the Class includes approximately 800,000 members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

56.    Ascertainablity: Names and addresses of members of the Class are available from Defendants' records. Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

57.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class has been subjected to the same unlawful, deceptive, and improper practices and has been damaged in the same manner thereby.

58.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class, because they have no interests which are adverse to the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

59.    Superiority: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

a.   The expense and burden of individual litigation make it economically
     unfeasible for members of the Class to seek to redress their claims
     other than through the procedure of a class action.

b.   If separate actions were brought by individual members of the Class, the
     resulting duplicity of lawsuits would cause members to seek to redress
     their claims other than through the procedure of a class action; and

c.   Absent a class action, Defendants likely would retain the benefits of
     their wrongdoing, and there would be a failure of justice.

60.    Common questions of law and fact exist as to the members of the Class, as
required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which
affect individual members of the Class within the meaning of Federal Rule of Civil Procedure
23(b)(3).

61.    The common questions of fact include, but are not limited to, the following:

a.   Whether Defendants engaged in a pattern or practice of racketeering, as
     alleged herein;

b.   Whether Defendants engaged in deceptive acts or practices in
     connection with a consumer transaction in violation of New York
     General Business Law § 349;

c.   Whether Defendants failed to properly disclose the CPI auto insurance;

d.   Whether Defendants' practice of charging CPI auto insurance premiums
     to borrowers, as alleged herein, is illegal;

e.   Whether Defendants were members of, or participants in the conspiracy
     alleged herein;

f.   Whether documents and statements provided to Plaintiff and members
     of the Class omitted material facts;

13

g.      Whether Plaintiff and members of the class sustained damages, and if so, the appropriate measure of damages; and

h.      Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

62.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

a.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants;

b.      The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.      Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

63.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action

## FIRST CLAIM FOR RELIEF

**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1962(c)**
**(On Behalf of the Nationwide Class)**

64.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

65.    Plaintiff brings this claim for relief on behalf himself and the members of the Nationwide Class.

### THE WELLS FARGO CPI ENTERPRISE

66.    Defendants are all persons within the meaning of Title 18 United States Code section 1961(3).

67.    At all relevant times, in violation of Title 18 United States Code section 1962(c), Defendants, including their directors, employees, and agents, conducted the affairs of an association-in-fact enterprise, as that term is defined in Title 18 United States Code section 1961(4) (the "Wells Fargo CPI Enterprise"). The affairs of the Wells Fargo CPI Enterprise affected interstate commerce through a pattern of racketeering activity.

68.    The Wells Fargo CPI Enterprise is an ongoing, continuing group or unit of persons and entities associated together for the common purpose of maximizing profits by unlawfully charging Wells Fargo's auto borrowers for unlawful, unnecessary, overpriced and undisclosed collateral protection insurance policies.

69.    While the members of the Wells Fargo CPI Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The Wells Fargo CPI Enterprise has a systematic linkage because there are contractual relationships,

agreements, financial ties and coordination of activities between Wells Fargo and National General Insurance.

70.    As discussed above, operating the Wells Fargo CPI Enterprise according to Wells Fargo's policies and procedures, Defendants control and direct the affairs of the Wells Fargo CPI Enterprise and use the other members of the Wells Fargo CPI as instrumentalities to carry out Wells Fargo's fraudulent scheme.

71.    These policies and procedures established by Wells Fargo include having National General verify whether a borrower maintains the required insurance and underwriting a policy on behalf of the borrower, providing lending documents that fail to properly disclose the CPI insurance, providing statements that fail to properly disclose the CPI auto insurance premiums, and arranging the order of charges to borrower's accounts to cause borrowers to become delinquent.

## THE PREDICATE ACTS

72.    Defendants' systematic schemes to unlawfully charge premiums, interest, and other charges for unnecessary CPI policies on the accounts of borrowers who have auto loans from Defendants, as described above, was facilitated by the use of the United States Mail and wire. Defendants' schemes constitute "racketeering activity" within the meaning of Title 18 United States Code section 1961(1), as acts of mail and wire fraud, under Title 18 United States Code sections 1341 and 1343.

73.    In violation of Title 18 United States Code sections 1341 and 1343, Defendants utilized the mail and wire in furtherance of their scheme to defraud its auto loan customers by obtaining money from borrowers using false or fraudulent pretenses.

74.    Through the mail and wire, the Wells Fargo CPI Enterprise provided insurance policies, lending documents, auto loan statements, payoff demands or proofs of claims to

borrowers, demanding that borrowers pay CPI auto insurance premiums and related charges. Defendants also accepted payments and engaged in other correspondence in furtherance of their scheme through the mail and wire.

75.    The CPI auto insurance policies were unlawful and thus Defendants' representations that the premiums and related charges were owed were fraudulent and in communications to borrowers, Defendants made false statements using the Internet, telephone, facsimile, United States mail and other interstate commercial carriers.

76.    Defendants' fraudulent statements were material to Plaintiff and the members of the Class. Defendants represented that the CPI auto insurance charges were lawful and necessary and required for Plaintiff and members of the class to maintain their loan accounts in good standing and avoid further late fees and repossession of their vehicles.

77.    Each of these acts constituted an act of mail fraud for purposes of Title 18 United States Code section 1341.

78.    Additionally, using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about the premiums and fees to borrowers, to pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of Title 18 United States Code section 1343.

79.    In an effort to pursue their fraudulent scheme, Defendants knowingly fraudulently represented that the premiums and charges were owed.

80.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of Title 18 United States Code section 1961(5) in which Defendants have engaged under Title 18 United States Code section 1962(c).

81.     All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the Wells Fargo CPI Enterprise racketeering enterprise. The racketeering acts committed by the Wells Fargo CPI Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on the members of the Class.  Because this case is brought on behalf of a class of similarly situated borrowers and there are numerous acts of mail and wire fraud that were used to carry out the scheme, it would be impracticable for Plaintiff to plead all of the details of the scheme with particularity.  Plaintiff cannot plead the precise dates of all of Defendants' uses of the mail and wire because this information cannot be alleged without access to Defendants' records.

82.     The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

83.     Numerous schemes have been completed involving repeated unlawful conduct that by its nature, projects into the future with a threat of repetition.

84.     As a direct and proximate result of these violations of Title 18 United States Code sections 1962(c) and (d), Plaintiff and members of the class have suffered substantial damages. Defendants are liable to Plaintiff and members of the Class for treble damages, together with all costs of this action, plus reasonable attorney's fees, as provided under Title 18 United States Code section 1964(c).

## SECOND CLAIM FOR RELIEF

**Violation of the Racketeer Influenced and Corrupt Organizations Act,
Conspiracy to Violate Title 18 United States Code section 1962(c)
18 U.S.C. § 1962(d)
(On Behalf of the Nationwide Class)**

85.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

86.    Plaintiff brings this claim for relief on behalf of himself and the members of the Nationwide Class.

87.    As set forth above, in violation of Title 18 United States Code section 1962(d), Defendants conspired to violate the provisions of Title 18 United States Code section 1962(c).

88.    As set forth above, Defendants, having directed and controlled the affairs of the Wells Fargo CPI Enterprise, were aware of the nature and scope of the enterprise's unlawful scheme, and they agreed to participate in it.

89.    As a direct and proximate result, Plaintiff and the members of the Class have been injured in their business or property by the predicate acts which make up Defendants' patterns of racketeering activity in that unlawful force-placed insurance premiums were assessed on their auto loan accounts.

## THIRD CLAIM FOR RELIEF

**Deceptive Acts or Practices in Violation of New York General Business Law § 349**

**(On Behalf of the New York State Class)**

90.    Plaintiff incorporates by reference in this claim for relief each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

19

91.     Plaintiff brings this cause of action on behalf of himself and the New York State Class against Defendants.

92.     Plaintiff and New York Subclass members are "persons" within the meaning of New York General Business Law ("N.Y. GBL") § 349(h).

93.     Each of the Defendants is a "business," "trade" or "commerce" within the meaning of N.Y. GBL § 349(a).

94.     Each of the Defendants is a "person," "firm," "corporation," and "association" within the meaning of N.Y. GBL § 349(b).

95.     "Deceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.  N.Y. GBL § 349(a).

96.     Defendants' conduct in charging New York State Class Members for the unnecessary, overpriced CPI auto insurance policies constitutes an unfair, abusive and deceptive act and practice.

97.     In the course of their business, Defendants concealed and suppressed material facts concerning the CPI auto insurance. Defendants had a duty to properly disclose but failed to properly disclose the policies and failed to disclose the policies were unnecessary and unlawful.

98.     This conduct was repetitive and consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances and did mislead Plaintiff and the New York State Class Members.

99.     Plaintiff and New York State Class Members relied on Defendants' fraudulent representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

100.    Plaintiff and New York State Class Members were damaged by paying for unlawful premiums and other charges as a direct and proximate result of the CPI auto insurance policies.

101.    Defendants' conduct is an incurable deceptive act because it was done as part of a scheme with intent to defraud and mislead.

102.    The New York State Class risks irreparable injury because of Defendants' acts and omissions in violation of N.Y. GBL § 349, and these violations present a continuing risk to the New York State Class and the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

103.    Plaintiff and the New York State Class seek actual damages (or fifty dollars per violation, whichever is greater), treble damages for Defendants' willful and/or knowing violations of this statute, and reasonable attorney's fees, under N.Y. GBL § 349(h).

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

104.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

105.    Plaintiff brings this claim for relief on behalf of himself and the members of each of the Classes.

106.    By their wrongful acts and omissions of material facts, Defendants were unjustly enriched at the expense of Plaintiff and members of the Class.

107.    Thus, Plaintiff and members of the Class were unjustly deprived.

108.    It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein.

109.    Plaintiff and members of the Class seek restitution from Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## FIFTH CLAIM FOR RELIEF

### Fraud

110.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

111.    Plaintiff brings this claim for relief on behalf of himself and the members of each of the Classes.

112.    Defendants concealed and suppressed material facts, namely, that the CPI auto insurance policies were unlawful and unnecessary. In truth and in fact, borrowers were not obligated to pay for the CPI auto insurance policies or the inflated premiums, late fees and other expenses that resulted. Contrary to Defendants' communications, Defendants were not legally authorized to assess and collect these charges and fees.

113.    Plaintiff and class members relied on Defendants' representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

114.    Defendants knew their unnecessary CPI auto insurance policies were unlawful and their concealment and suppression of materials facts relating to those polices was false, misleading, and unlawful.

115.    As a result of Defendants' fraudulent conduct, Plaintiff and members of the Class have been injured in fact and suffered a loss of money or property. Plaintiff and members of the Class paid for the CPI auto insurance policies and other fees as a result of Defendants' conduct.

116.    Defendants omitted and concealed material facts, as discussed above, with knowledge of the effect of concealing of these material facts. Defendants knew that by misleading consumers, they would generate higher profits.

117.    Plaintiff and members of the Class justifiably relied upon Defendants' knowing, affirmative, and active concealment. By concealing material information about their scheme to assess undisclosed insurance premium fees on borrowers' accounts, Defendants intended to induce Plaintiff and members of the Class into believing that they owed Defendants money that Defendants were not actually entitled. Moreover, in many instances, the amount necessary to cover the premium and interest for the policy was automatically deducted from the borrowers' bank account without the borrowers' knowledge.

118.    Defendants acted with malice, oppression, or fraud.

119.    As a direct and proximate result of Defendants' conduct and omissions and active concealment of material facts, Plaintiff and each member of the Class has been damaged in an amount according to proof at trial.

## PRAYER FOR RELIEF

Plaintiff, and on behalf of himself and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

a.    Certifying the Classes, as requested herein, certifying Plaintiff as the representative of the Classes, and appointing Plaintiff's counsel as counsel for the Classes;

b.    ordering that Defendants are financially responsible for notifying all members of the Classes of the alleged omissions discussed herein;

c.    awarding Plaintiff and the members of the Classes compensatory damages in an amount according to proof at trial;

d.    awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiff and members of the Classes;

e.    awarding Plaintiff and the members of the Classes treble damages in an amount according to proof at trial;

f.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

g.    ordering Defendants to engage in corrective advertising;

h.    ordering Defendants to pay for the costs to repair or restore credit scores and credit histories of Plaintiff and members of the Classes;

i.    awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

j.    awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

k.      for such other and further relief as the Court deems just and proper.

Dated:  August 29, 2017
        New York, New York

By:     */s/Curt D. Marshall*
        Curt D. Marshall, Esq.
        Robin L. Greenwald, Esq.
        (*Pro hac vice* Application Anticipated)
        **WEITZ & LUXENBERG, P.C.**
        700 Broadway
        New York, NY  10003
        Telephone:  212-558-5677
        Facsimile:  212-344-5461

        Paul F. Novak, Esq.
        (*Pro hac vice* Application Anticipated)
        **WEITZ & LUXENBERG, P.C.**
        Chrysler House
        719 Griswold, Suite 620
        Detroit, MI  48226
        Telephone:  313-800-4170
        Facsimile:  646-293-7992

        *Attorneys for Plaintiff*

25